IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Lorraine E. Smith, ) | |
| ) | Civil Action No. 6:04-1101-DCN-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) benefits on February 5, 2001, alleging that she became unable to work on January 24, 2001, due to high blood pressure, stomach problems, a

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

diseased bladder, a bone spur in her neck that caused arm pain, back pain and problems, and status post mastectomy (due to breast cancer) with reconstruction. The applications were denied initially and on reconsideration by the Social Security Administration. On April 26, 2002, the plaintiff requested a hearing, which was held on August 2, 2003. The administrative law judge, before whom the plaintiff, her attorney and a vocational expert appeared, considered the case *de novo*, and on September 4, 2003, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on February 11, 2004. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1) The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through March 31, 2006.
>
> (2) The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> (3) The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR 404.1520(b) and 416.920(b).
>
> (4) These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> (5) The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> (6) The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

(7) The claimant has the residual functional capacity for light work, reduced by restrictions which require only occasional pushing or pulling with her upper extremities. She can perform simple, routine work involving only one or two step instructions in a low stress environment (defined as work requiring few decisions) and work involving no more than limited interaction with the general public.

(8) The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

(9) The claimant is a "closely approaching advanced age" (20 CFR §§ 404.1563 and 416.963).

(10) The claimant has a high school education (20 CFR §§ 404.1564 and 416.964).

(11) The claimant acquired skills from her past work but those skills are not transferable to other work within her residual functional capacity.

(12) The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

(13) Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.14 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a bench worker, laundry folder, and packer.

(14) The claimant is not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## **EVIDENCE PRESENTED**

The plaintiff was born on March 29, 1949; she was 51 years old at the time of her alleged onset of disability and 54 years old at the time of the ALJ's decision (Tr. 79).

She attended school through the twelfth grade (Tr. 91). She has past relevant work experience as an assembly line inspector, textile and hosiery inspector, sewing machine operator, order puller, and certified nursing assistant (Tr. 86, 97, 103-10).

*Medical Evidence*

The medical evidence indicates that the plaintiff has a history of breast cancer and mastectomy on the left, cervical disc disease, arthritis in her neck and left knee, and depression. On November 23, 1998, the plaintiff underwent modified mastectomy on the left with breast reconstruction for treatment of breast cancer, and she underwent breast reduction on the right at that time for symmetry. No chemotherapy or radiation was necessary, and there is no evidence of recurrence. Except for drainage of a hematoma in December 1999, which developed at the harvest site of the reconstruction, and drainage of a seroma in March 2000, there were no complications from the surgery. Specifically, there were no reports of pain or weakness in either arm, and the plaintiff worked thereafter until January 2001 (Tr. 132-210).

The plaintiff has a history of "painful bladder syndrome," and underwent cystoscopy, bladder distention, and bladder biopsies in September 2000, which showed some inflammation but no malignancy. She reported significant improvement and less urinary frequency with medication (Tr. 211-18).

The plaintiff has hypertension which is adequately but not optimally controlled, according to readings reflected in the record. There is, however, no evidence of heart failure, ischemia, visual disturbance, renal involvement or stroke to indicate complications from high blood pressure.

The plaintiff was hospitalized in March 2002 for evaluation and treatment of severe nausea and vomiting. Findings on esophagogastroduodenoscopy were consistent with Barrett's esophagus, for which anti-reflux medication is prescribed (Tr. 289-97).

The plaintiff has an MRI-proven spondylosis and degenerative disc disease in her cervical spine. MRI of her lumbar spine is unremarkable (Tr. 267-68). She has x-ray proven hallux valgus and mild osteoarthritis in her left foot and moderate osteoarthritis in her left knee, for which analgesic and non-steroidal, anti-inflammatory medications are prescribed (Tr. 335). Specifically demonstrated functional limitations on examination are not reported, and no orthopedic or neurological referral has been made.

Dr. Fred McQueen, a specialist in emergency medicine, began treating the plaintiff on October 9, 2001. Except for vital signs, the only objective finding reported by Dr. McQueen is of swelling in her left upper extremity, which he attributes to lymphedema. He instructed the plaintiff to keep her arm up on a pillow at night when she sleeps. He encouraged the plaintiff to exercise, walk or ride a stationary bicycle; instructed her in a low calorie, low fat diet; and recommended she wear a knee brace. On January 11, 2002, Dr. McQueen opined the plaintiff has no transferable skills, cannot do any manual labor, and is permanently and totally disabled for gainful employment (Tr. 285-88). He subsequently indicates specific limitations against lifting, pulling and pushing (Tr. 337).

Dr. Steve Smith has treated the plaintiff since January 2003 for hypertension and pain complaints related to arthritis and degenerative cervical disc disease, as demonstrated on x-ray. The only related clinical finding reported is of non-specific decreased range of motion. Based apparently on the plaintiff's subjective complaints, he opined the plaintiff is permanently and totally disabled (Tr. 330-35).

Dr. Gary D. Bartell, a psychiatrist, examined the plaintiff on June 2, 2001, in connection with this claim for benefits. The plaintiff reported she had never received treatment by a mental health professional but took medicine for her nerves prescribed by her family physician. The plaintiff cried off and on throughout the interview. She complained of poor sleep, low energy, decreased interests, and increased appetite. Her activities included cooking, washing dishes, grocery shopping, watching television and going to

5

church sometimes. She reported no interaction with friends and generally described a setting of social isolation. She appeared tense and preoccupied, but she was alert and well-oriented, and her thought processes were logical. Her short-term recall was good; she could perform simple calculations; and her general knowledge was fair. Dr. Bartell diagnosed a major depressive disorder and passive dependent personality (Tr. 241-44).

Since November 2002, the plaintiff has been a client at Tri-County Mental Health Clinic. Antidepressant medication has been prescribed for a depressive disorder and a panic disorder without agoraphobia with symptoms of poor sleep, poor appetite, no energy, no motivation, low self-esteem, increased anxiety, and panic attacks. Medication adjustment was ongoing at last report of record in February 2003 (Tr. 320-29).

### *Plaintiff's Testimony*

The plaintiff testified as to pain in both arms, neck, left knee and left foot. She stated that she lives with her son, who does all of the housework. She said she has trouble getting in and out of a shower. She testified that she goes to church twice a month. According to her testimony, she has pain in her left knee and foot if she stands for very long and she spends most of her time lying on a couch. She testified that she stopped working when she was laid off and that she drew unemployment for nine months thereafter.

### *Administrative Decision*

The ALJ followed the five-step sequential evaluation process to determine that the plaintiff was not disabled. At the first step, he found the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (Tr. 20, Finding 2). At the second step, the ALJ found that the plaintiff suffered from an impairment or a combination of impairments considered "severe" (Tr. 20, Finding 3). At the third step of the sequential

evaluation, however, the ALJ found that the plaintiff's impairments did not meet or medically equal a listed impairment (Tr. 20, Finding 4).

At the fourth step, the ALJ assessed the plaintiff's residual functional capacity (RFC) and determined that she retains the RFC to perform "light work, reduced by restrictions which require only occasional pushing or pulling with her upper extremities" (Tr. 21, Finding 7). In reaching this conclusion, the ALJ considered the relevant medical evidence and the hearing testimony regarding the plaintiff's symptoms and limitations. Based upon this RFC, the ALJ found that the plaintiff's impairments precluded her from performing past relevant work activity (Tr. 21, Finding 8). At the fifth step of the sequential evaluation, however, the ALJ found that the plaintiff was capable of performing a significant number of jobs in the national economy (Tr. 21, Finding 13). Therefore, the ALJ found that the plaintiff was not disabled as defined by the Social Security Act (Tr. 21, Finding 14).

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of

impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents her from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the plaintiff actually performed the work. SSR 82-62. The plaintiff bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). She must make a *prima facie* showing of disability by showing that she is unable to return to her past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## ANALYSIS

The plaintiff contends that the ALJ erred by not giving proper weight to the opinions of treating physicians Dr. Steve Smith and Dr. Fred McQueen and by posing defective hypothetical questions to the vocational expert.

### *Opinion of Treating Physicians*

The plaintiff contends that the ALJ erred by failing to give controlling weight to the medical opinions of treating Dr. Steve Smith and Dr. Fred McQueen and giving little weight to the testimony of treating physician Dr. Joseph C. Williams. This argument is without merit.

Normally, the opinion of a treating physician "is entitled to great weight for it reflects an expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983). In *Craig v. Chater,* however, the Fourth Circuit Court of Appeals stated that "precedent does

9

not require that a treating physician's testimony 'be given controlling weight'. . . . [I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." 76 F.3d 585, 590 (4th Cir. 1996).  If not entitled to controlling weight, the value of the opinion must be weighed, and the ALJ must consider: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician.  20 C.F.R. § 404.1527(d)(2).  However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions.  These are administrative findings reserved for the Commissioner's determination. Social Security Ruling 96-2p.

Here, the ALJ specifically considered their short lengths of treatment, their limited frequency and conservative treatment, the questionable support for their opinions and inconsistency with the record, as well as the fact that Dr. McQueen's specialty is emergency medicine.

> Considering how recently both Dr. Smith and Dr. McQueen began treating the claimant before each offered an opinion as to her ability to work, they were quick to conclude the claimant is permanently and totally disabled. Neither physician provides much in the way of objectively demonstrated functional limitations on examination; i.e., they do not indicate what body part has limited motion or the extent of limitation of motion, and there are no findings of abnormal gait, demonstrated inability to stoop, squat or bend, or decreased strength, swelling, muscle spasm; etc.  Notably, no orthopedic referral was made and no recommendations for treatment, other than medication, was offered.
>
> Without specific findings of functional limitations, I give little weight to either opinion.

(Tr. 17). This court agrees that the opinions of Dr. Smith and Dr. McQueen are not entitled to controlling weight. In addition, as the ALJ properly noted, their opinions cannot resolve the ultimate issue of disability, which is reserved for the Commissioner. *Thomas v. Celebrezze*, 331 F.2d 541, 545-46 (4th Cir. 1964). Accordingly, this court finds no error in the ALJ's consideration of Dr. Smith's or Dr. McQueen's opinions.

### *Hypothetical Questions*

The plaintiff also contends that the hypothetical questions posed by the ALJ to the vocational expert were improper because they did not consider all the impairments of which proof had been presented. Specifically, the plaintiff claims that the ALJ should have considered the plaintiff's mental impairments – depression, anxiety, passivity and dependency – and that not doing so rendered the hypothetical questions incomplete.

The Fourth Circuit Court of Appeals has held that "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). The questions, however, need only reflect those impairments that are supported by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987). The purpose of a vocational expert's testimony is to assist in determining whether jobs exist in the economy which a particular claimant could perform. *Id.* The ALJ, however, has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions, so long as there is substantial evidence to support the ultimate question. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986).

Here, the ALJ specifically considered the report of psychiatrist Dr. Gary Bartell, who diagnosed the plaintiff with major depressive disorder and passive dependent personality.

> I have discussed above the medical evidence concerning the claimant's depression and find that it creates moderate restriction of his activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace on complex tasks and detailed instructions, but she should be able to attend to and perform simple tasks throughout the work day for at least two hours at a time with normal work breaks and without supervision.

(Tr. 17-18, 19). Thus, based on her mental impairments, the ALJ restricted the plaintiff's RFC "to the performance of simple, routine work involving only one or two step instructions in a low stress environment (defined as work requiring few decisions); and work involving no more than limited interaction with the general public" (Tr. 19).

Contrary to the plaintiff's contention, the ALJ did include limitations based on the plaintiff's mental impairments by asking the vocational expert to assume an individual "with restrictions which require simple, routine work with one or two step instructions, a low stress environment, and limited interaction with the public" (Tr. 52-53). Accordingly, the ALJ's hypothetical questions were proper.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court concludes the ALJ's findings are supported by substantial evidence and recommends the decision of the Commissioner be affirmed.

> s/William M. Catoe
> United States Magistrate Judge

August 4, 2005

Greenville, South Carolina